LEAGUE v. WM. M. RICE INSTITUTE FOR ADVANCEMENT OF LITERATURE, SCIENCE, AND ART.

(Court of Civil Appeals of Texas. El Paso. Nov. 27, 1912. Rehearing Denied Jan. 29, 1913.)

1. APPEAL AND ERROR (§ 1010*)—REVIEW—THEORY AND GROUNDS OF DECISION.

Upon appeal in a case tried to the court in which no conclusions of law or fact were filed, the judgment must be affirmed, if it can be sustained on any theory of the evidence, so far as the sufficiency of the evidence is concerned.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3979–3982, 4024; Dec. Dig. § 1010.*]

2. BOUNDARIES (§ 8*)—TRIAL OF ISSUES—ASCERTAINING ORIGINAL SURVEYED LINES.

In all boundary disputes, the primary object is to ascertain the lines as located by the original surveyor, to which end his footsteps are to be followed if possible.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 66–76; Dec. Dig. § 8.*]

3. BOUNDARIES (§ 37*)—SUFFICIENCY OF EVIDENCE—LOCATION.

In trespass to try title involving a disputed boundary line, evidence held sufficient to sustain a judgment for plaintiff.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 184–194; Dec. Dig. § 37.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

4. APPEAL AND ERROR (§ 742*)—ASSIGNMENT OF ERROR—SUFFICIENCY.

An assignment of error which of itself or by its supporting statement does not disclose in what way the testimony complained of was incompetent, misleading, or prejudicial presents no question for review.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

5. APPEAL AND ERROR (§ 728*)—ASSIGNMENT OF ERROR—SPECIFICATION OF ERROR.

An assignment of error which does not advise the court upon what theory appellant contends that photographs were inadmissible, or in what respect their admission was harmful, presents no question for review.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3010–3012; Dec. Dig. § 728.*]

6. APPEAL AND ERROR (§ 742*)—ASSIGNMENTS OF ERROR—PROPOSITIONS AND STATEMENTS.

Assignments of error not supported by propositions and statements as required by the rules, sufficient to advise the court of the reasons why appellant contends that they were well taken and which leave the court to conjecture, present nothing for review.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

Appeal from District Court, Harris County; Charles E. Ashe, Judge.

Trespass to try title by the Wm. M. Rice Institute for the Advancement of Literature, Science, and Art against J. C. League. Judgment for plaintiff, and defendant appeals. Affirmed.

Maco & Minor Stewart, of Galveston, for appellant. Baker, Botts, Parker & Garwood, of Houston, for appellee.

HIGGINS, J. This is an action of trespass to try title instituted by appellee to recover two small tracts of land off of the east end of lot three of the Rothhaas subdivision of the Obedience Smith grant in Harris county, upon which grant the city of Houston in part is situated. Upon trial before the court, without a jury, judgment was rendered in favor of appellee.

[1] No conclusions of law and fact were filed by the court, and, so far as concerns those assignments questioning the sufficiency of the evidence to support the verdict, it may be said the judgment must be affirmed if it can be sustained upon any theory of the evidence. On April 21, 1848, the Smith grant was subdivided and platted by Fr. Jacob Rothhaas, and on his map appear lots numbered 3 and 6, each containing 100 acres. Appellee owns the east one-third of 3, appellant the western and adjoining part of 6, and the issue between the parties is one of boundary, involving the location of the dividing line between the two lots mentioned, the same being the east line of lot 3 and west line of 6. The map shows the north line and south line of each of the lots to be 1,000 varas in length.

The first six assignments, submitted as propositions, question the sufficiency of the evidence to support the judgment. Neither the assignments nor the statements supporting the same indicate with any reasonable degree of certainty the theory upon which appellant predicates his contention, but, so far as we can gather therefrom, it seems to be contended that inasmuch as the map shows the entire grant to have been subdivided, and that the east line of 3 was thereby located 1,000 varas east of the west line of the grant, and the land in controversy being situated more than 1,000 varas east of the west line of the grant, it therefore could not have been embraced and included within the boundaries of 3, but necessarily must have been within the boundaries of 6. The A. C. Reynolds survey lies immediately west of and adjoining the Smith, and the east line of the Reynolds and the west line of the Smith are therefore coincident. The northeast corner of the Reynolds and northwest corner of the Smith are likewise coincident, and the Reynolds east line as now fenced is 1,080 varas west of the east boundary line of 3 as fixed by the court. As the east line of the Reynolds and west line of the Smith are coincident, and this line of the Reynolds as now fenced being 1,080 varas distant from the east line of the disputed strip, appellant therefore contends that according to the Rothhaas map the disputed land is part of 6, or at any rate cannot be recovered by appellee as a part of 3, as the map fixes and limits the east line of 3 at a point 1,000 varas east of the west line of the grant. This contention necessarily involves the premise that the dividing line between the Reynolds and Smith is a fixed and established line, and the further premise that, in determining the distance of the east line of 3 from the west line of the Smith grant, conclusive and controlling effect shall be given to the fact that the map shows the east line of 3 to be distant 1,000 varas from the west line of the grant. There is testimony, however, in the record to show that the true location of the east line of the Reynolds is a matter of doubt and dispute, and it may not be coincident with the line as now fenced and which appellant contends is the true line to be recognized in fixing the east line of lot 3. This uncertainty existing as to the true location of the line, it may therefore readily be true that Rothhaas may have regarded the dividing line between Reynolds and Smith as being located farther east than the Reynolds line is now fenced, and, if so, the call for distance of the north line of 3 as shown on his map may be entirely consistent with the action of the court in locating the disputed line so as to include the land in controversy within lot 3.

In this connection it may be well to state the difference between the parties in the location of the disputed line is a matter of 80 varas, appellee contending that the dis-

puted line should be located 1,080 varas east of the fenced line of the Reynolds, while appellant contends it should be located only 1,000 varas east; that being the distance shown on the map.

We think the judgment of the lower court may be upheld upon the fact alone that the true location of the line between the Reynolds and Smith not being definitely known, controlling effect should therefore not be given to the call for distance of 1,000 varas, which the Rothhaas map shows to be the length of the north line of lot 3.

[2] However, in all boundary disputes the primary object to be obtained is to ascertain the lines as they were located by the original surveyor, and to that end his footsteps are to be followed, if possible to do so.

[3] Applying this rule, we think the testimony is not only sufficient, but overwhelmingly supports the trial court in its location of the disputed line, and that the court has located it at the point it was fixed and located by Rothhaas. We deem it unnecessary to discuss the testimony in detail, but will state as briefly as possible the salient facts sustaining the judgment. The line in dispute runs north and south, and according to the map the north end thereof is located 1,000 varas due west of the northeast corner of lot 6. This northeast corner of 6 is coincident with the southwest corner of lot 11, and the west line of 11 runs due north and south. Lot No. 11 is known as the Bagby place, and on its western side is an old fence line and straight line of trees, which under the testimony it is fair to assume marked the western line of lots 11 and 12, and that at the south end of the same the southwest corner of 11 was located. This point since 1866 has been recognized as being the southwest corner of 11 and northeast corner of 6. Under no possible theory could the north line and the south line of 6 have a greater length than 1,000 varas, and by measuring 1,000 varas west from the Bagby southwest corner the disputed line is fixed at the point the same was fixed by the trial court.

As stated above, Rothhaas platted the grant in April, 1848. Prior to that time Obedience Smith had conveyed 150 acres of the grant to D. F. Tankersley by deed dated January 25, 1846, and noted on the Rothhaas map as the Lamar place. Ten acres out of this 150 acres passed to Mary Minocar (or Meineke), and in May, 1847, Rothhaas surveyed this 10 acres and identified one of the corners by a bearing tree; the stump of this bearing tree was pointed out to plaintiff's witness Stimson by one of the Meinekes, who testified that this stump was known as one of the bearing trees of the northwest corner of the 10-acre tract. According to the testimony of Stimson, he checked the Bagby corner with this corner of the Meineke tract and found the same checked ap-

proximately, and it also checked within 24 varas of what was known as the old Meineke ditch. The Meineke ditch by general reputation is known as the dividing line between lots 8 and 48, and this line is a prolongation of the dividing line between lots 3 and 6. Again, Obedience Smith conveyed 50 acres of land out of the grant in the form of a rectangular to Robert C. Campbell, shown on the Rothhaas map as Robert C. Campbell's 50 acres. Campbell conveyed the same to I. Castanie. Castanie platted the same into lots and blocks, and it is known as the Castanie addition to the city of Houston, and was platted by Rothhaas himself on April 12, 1848. The Castanie addition is one of the oldest additions to the city of Houston, is thickly populated, and, since it was located by Rothhaas himself, it indicates where he located the 50 acres shown on his map as the Robert C. Campbell 50 acres, and according to the testimony of Stimson the disputed line as located by the court checks precisely with the Castanie addition, whereas it would not check if it was located as appellant contends it should be located. Again, on the Rothhaas map at its northeast corner will be found a tract of land almost in the shape of a square. This tract of land was subdivided and platted by Rothhaas on February 15, 1848. A. P. Thompson conveyed to W. G. Martin, by deed dated February 23, 1846, one acre of land out of this tract at the northeast corner of the Smith grant. One of the corners of this Martin tract was marked by a stake, and it is shown that this stake was generally reputed to be the northeast corner of the Thompson 25-acre tract. Rothhaas located this stake, and plaintiff's witness Pepperkorn testified that, according to the calls for course and distance shown on the Rothhaas map, this stake checks within 22 varas of the disputed line as located by the court. It furthermore appears that the line as located by the court corresponds with the locations of all of the additions to the city of Houston which intervene between the disputed line and the city itself and with the lots, blocks, and streets of such additions. In other words, the trial court located the disputed line with reference to the Bagby corner and line rather than to the west line of the Smith, and from the facts which we have briefly discussed we think in so doing he correctly followed the footsteps of the original surveyor, and overrule appellant's first six assignments of error.

The twelfth assignment is overruled. The error, if any, in admitting this map, is not reversible error. Rule 62a for the government of Courts of Civil Appeals (149 S. W. x).

[4] The twentieth assignment is overruled. Neither the assignment itself nor its supporting statement discloses in what manner the testimony complained of was incompetent, misleading, or prejudicial.

[5] The twenty-eighth assignment is over-

ruled. We are not advised upon what theory appellant contends the photographs are inadmissible, or in what respect their admission was harmful or prejudicial.

The thirtieth assignment, if entitled to consideration, presents no reversible error.

[6] We decline to consider the remaining assignments of error. They are not supported by propositions and statements, as required by the rules, sufficient to advise this court of the reasons why appellant contends the same are well taken, and we are left to conjecture and surmise to determine the the theory upon which the assignments are based.

Finding no reversible error, the judgment is affirmed.

HARPER, C. J., did not sit in this case.

### On Rehearing.

HIGGINS, J. In the original opinion it is said that the northeast corner of the Reynolds and northwest corner of the Smith are coincident. This is an erroneous statement, as it is the southwest corner of the John Austin grant and the northwest corner of the Smith that are coincident, the northwest corner of the Reynolds being north of the coincident corner. This erroneous statement is immaterial but we correct same as appellant has called out attention thereto in his motion for rehearing.

Overruled.